# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VYANNE SAMUELS**, | |
| Plaintiff, | |
| v. | Case No. 19-cv-00536 (CRC) |
| **SAFEWAY, INC.**, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiff Vyanne Samuels claims she was injured after she tripped over a concrete "wheel stop" in a Safeway parking lot. According to Samuels, who suffers from an unspecified disability, the placement of the wheel stop violated specifications established pursuant to the Americans with Disabilities Act ("ADA"). Samuels sued Safeway under a theory of both negligence and negligence *per se*. Safeway has filed a partial motion for judgment on the pleadings, attacking only Samuels's negligence *per se* claim. For the following reasons, the Court will grant the motion.

## I. Background

Defendant Safeway owns and maintains a parking garage attached to its store at 1855 Wisconsin Avenue Northwest in Washington, D.C. Compl. ¶ 6. Inside the garage, there are several long rectangular concrete slabs, colloquially referred to as "wheel stops," placed at the front of each parking space. Id. ¶ 7. On or about June 14, 2018, Samuels parked in the Safeway garage, bought groceries, and returned to her car. Id. ¶ 16. While returning to her car, Samuels alleges that she tripped on one of the wheel stops and fell. Id. ¶ 19. Samuels sustained a fractured wrist, severe injuries to her lumbar spine, and various other injuries. Id. ¶ 20.

Samuels filed suit in the Superior Court of the District of Columbia. She identified as an individual with an unspecified disability under the ADA and alleged that the placement of the wheel stop violated the ADA Accessibility Guidelines, namely Advisory 502.4, which regulates elevation changes in access aisles. Id. ¶¶ 28–29. Safeway responded by removing the suit to this Court on the basis of diversity jurisdiction. Safeway has now moved for a partial judgment on the pleadings requesting the dismissal of Count II of Samuels's complaint for failure to state a claim. Safeway contends that the ADA may not be used as the basis of a negligence *per se* claim for personal injury and that Samuels includes no other statutory basis for the *per se* action. Samuels opposed, Safeway replied, and the motion is now ripe for the Court's resolution.

## II. Legal Standard

In order to grant judgment on the pleadings under Federal of Civil Procedure 12(c), there must be no material fact in dispute, and the moving party must be entitled to judgment as a matter of law. Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1370 (D.C. Cir. 2008). The standard courts apply to resolving a motion for judgment on the pleadings is often confused with the standard applied to a motion to dismiss under Rule 12(b), especially for failure to state a claim pursuant to Rule 12(b)(6). See Maniaci v. Georgetown Univ., 510 F. Supp. 2d 50, 58 (D.D.C. 2007) ("The appropriate standard for reviewing a motion for judgment on the pleadings is virtually identical to that applied to a motion to dismiss under Rule 12(b)(6).") There are important differences, however. While a Rule 12(b) motion may be based on *procedural* failures, including "lack of subject-matter jurisdiction[ ] or . . . a lack of factual allegations to support a claim," a Rule 12(c) motion "centers upon the *substantive* merits of the parties' dispute." Tapp v. Washington Metro. Area Transit Auth., 306 F. Supp. 3d 383, 391–92 (D.D.C. 2016) (emphasis added). When evaluating a motion for judgment on the pleadings, inferences

should be drawn and facts should be viewed in the light most favorable to the non-moving party. Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992).

### III. Analysis

When sitting in diversity, this Court must apply the District of Columbia's substantive law. Metz v. BAE Sys. Tech. Sol. & Servs. Inc., 774 F.3d 18, 21–22 (D.C. Cir. 2014); see also Erie Co v. Tompkins, 304 U.S. 64 (1983). Under D.C. law, a negligence *per se* plaintiff must "(1) identify a particular law or regulation designed to promote safety, (2) show that the plaintiff is a member of the class to be protected by the statute, and (3) show that the statute imposes specific duties of care and protection on the defendant." Blake v. Securitas Sec. Servs., Inc., 962 F. Supp. 2d 141, 150 (D.D.C. 2013). The question in this case turns on the second element, namely whether Congress enacted the ADA to protect people in Ms. Samuels's position. The Court finds that because the ADA has neither a primary nor partial purpose of protecting people with disabilities from physical injury, it did not. Therefore, it will grant Safeway's motion for judgment on the pleadings with respect to Samuels's negligence *per se* claim.

### A. Congress enacted the ADA to combat disability discrimination

A brief examination of the ADA and case law interpreting it reveals that the ADA does not have a public-safety purpose that can provide the statutory linchpin for a negligence *per se* claim. The Court begins with the statute itself. Title III of the ADA expressly identifies its various purposes:

(b) Purpose. It is the purpose of this chapter—

    (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

3

> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b). Nowhere does the ADA mention the creation or promotion of safety measures. Instead, as § 12101(b) makes clear, the ADA's relentless focus is on the elimination of discrimination.

The Supreme Court has confirmed this understanding of the ADA's purpose. PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001) ("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals."). That purpose was reflected, the Supreme Court explained, in both § 12101(b)'s statement of purpose and also Congress's "findings" in § 12101(a). One such finding, highlighted by the Court in PGA Tour, states that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Another, also highlighted by the Court, states that "discrimination against individual with disabilities persists in such critical areas as employment, housing, public accommodations," and so on. Id. § 12101(a)(3). Findings like these spurred Congress to act. "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" PGA Tour, 532 U.S. at 675

(quoting S. Rep. No. 101–116, p. 20 (1989); H.R. Rep. No. 101–485, pt. 2, p. 50 (1990), U.S. Code Cong. & Admin. News 1990, pt. 2, pp. 303, 332).

Samuels contends that PGA Tour's discussion of the ADA does not bear on this case because the Supreme Court was not analyzing the ADA's purpose with respect to a negligence *per se* claim. Defendant's Opposition ("Opp."), ECF No. 9, at 7. The Court disagrees. Given that the resolution of this question requires this Court to determine the purpose of the ADA, the Supreme Court's explanation of the statute's purpose—regardless whether the case involved any argument that the statute had a public-safety purpose—is certainly instructive. The fact that the Court was not confronted with the argument that the statute had a public safety purpose relaxes PGA Tour's grip on this case, but it does not remove it altogether.

In any event, cases that have considered whether the ADA can support a negligence *per se* claim have uniformly concluded it cannot. A court in this district determined that personal-injury plaintiffs could not use the ADA as the basis of their D.C.-law negligence *per se* claim. Hunter v. District of Columbia, 64 F. Supp. 3d 158, 189 (D.D.C. 2014).[1] Plaintiffs there "argue[d] that accommodating the needs of disabled individuals does have a 'public safety' rationale." Id. The court was unpersuaded, reasoning that even if "protection from injury for the

---

[1] Hunter marshaled a number of other decisions by federal district courts sitting in other states that likewise concluded that the ADA was intended to combat discrimination, not to offer protection from injury for people with disabilities, and thus could not support a negligence *per se* claim. See, e.g., McCree v. Se. Pa. Transp. Auth., No. 07–4908, 2009 WL 166660, at *12 (E.D. Pa. Jan. 22, 2009) ("[V]iolation of an ADA regulation may not be used as evidence of negligence *per se* in a personal injury action like this one."); White v. NCL Am., Inc., No. 05–22030, 2006 WL 1042548, at *5 (S.D. Fla. Mar. 8, 2006) ("Because the ADA was not designed to protect those with disabilities from personal injuries, Plaintiff is unable to state a claim for *per se* negligence.").

disabled is no doubt a fortunate *by-product* of the ADA, it is clear that the statute was not designed with that purpose in mind." Id. (quoting White v. NCL Am., Inc., No. 05–22030, 2006 WL 1042548, at *5 (S.D. Fla. Mar. 8, 2006)) (emphasis added). That strikes the Court as correct. Although one of the *means* by which the ADA (especially its accessibility components) achieves an end to disability discrimination is by making certain that individuals with disabilities are able to safely access public accommodations, that does not make public safety the statute's *end*.

Still, Samuels protests that Hunter should be discounted because its "reasoning relied predominantly in pertinent part on other trial court opinions," including opinions "in jurisdictions outside of the District of Columbia." Opp. at 5. Samuels is correct that the Hunter court looked to decisions in other district courts, but that is hardly a reason to ignore it. The Hunter court did not blindly follow those other decisions that determined the ADA could not serve as the basis of negligence *per se* claim, but instead explained their reasoning and agreed with them. 64 F. Supp. 3d at 189 ("The Court agrees and concludes that the same rationale prevents [several other discrimination statutes] from serving as the basis of a negligence *per se* claim[.]"). For the reasons already explained, including the ADA's explicit statement that its overriding purpose is to end discrimination, this Court agrees with them, too.

Samuels urges the Court to consider Theatre Mgmt. Grp., Inc. v. Dalgliesh, 765 A.2d 986 (D.C. 2001), but that case does not help her much. There, the D.C. Court of Appeals held that the physical accessibility guidelines within the ADA have a safety objective. Id. at 991 ("[I]t is evident to us that the ADA—and specifically the physical accessibility guidelines promulgated under it—possess [a public safety objective.]"). However, the court limited its analysis to the question of whether the ADA guidelines could serve as evidence of a standard of care for the

6

purposes of an ordinary negligence claim. Id. ("The ADA standard constituted evidence of the standard of care, no more."). As for a negligence *per se* claim, the court noted that the plaintiff "advanced that theory below but the trial judge rejected it. The issue is not before us on appeal." Id. at 996 n.6. And the trial court's analysis, left undisturbed by the D.C. Court of Appeals, is completely consistent with this Court's: "Obviously, it would have been error if the court had instructed the jury that evidence of the ADA and the applicable C.F.R. violations constituted negligence *per se*, since the Act was promulgated to prevent discrimination, not physical injury." Dalgliesh v. Theatre Mgmt. Grp., Inc., No. 96-CA-3985, 1999 WL 638127, at *1 (D.C. Super. Ct. May 28, 1999).

Samuels insists that even if the ADA's primary purpose is to combat discrimination, it also has a partial safety-promoting purpose that can sustain a negligence *per se* claim. She relies heavily on Rong Yao Zhou v. Jennifer Mall Rest., Inc., 534 A.2d 1268 (D.C. 1987), which held that a statute prohibiting liquor license holders from serving alcohol to intoxicated individuals had the purpose of protecting both the intoxicated individual and the general public. However, Rong Yao Zhou is easily distinguishable, as it involved a question of to whom the protection from harm applied under a statute clearly designed with an overall safety purpose. In other words, there was no debate in Rong Yao Zhou, unlike in this case, over whether the statute had a public-safety purpose. It clearly did, and the only question was *whom* the statute sought to protect. Here, however, the Supreme Court and others have found that the ADA's primary purpose is ending disability-based discrimination; the only question, then, is whether an additional safety-promoting purpose can be gleaned from it. Id. Samuels thus asks more from Rong Yao Zhou than the facts of the case permit.

7

At any rate, the ADA reveals no additional, public-safety purpose. To the contrary, the statute contains clues that its purpose is sometimes in conflict with public safety concerns. For example, 42 U.S.C. § 12182 contains a provision which carves out an exception to the requirements set forth in the section when the individual in need of accommodation would pose a direct threat to the health and safety of others. The Supreme Court extended this same statutory exception, holding that when a structural modification would pose a direct threat to the health or safety of others, it is not a readily achievable modification that the ADA requires public accommodations to implement. Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 136 (2005). These clues suggest Congress understood that the ADA's commands may sometimes create safety concerns. Thus, Samuels in effect asks the court to read in a secondary purpose that the statute itself recognizes will sometimes be in tension with its primary purpose. The Court declines this invitation.

Given that the ADA cannot provide the statutory basis for Samuels's negligence *per se* claim, and because Samuels offers no other such basis, Safeway is entitled to judgment on the pleadings with respect to the negligence *per se* claim.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Partial Judgment on the Pleadings and dismiss Count II of the Plaintiff's Complaint. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: June 5, 2019